.Judge Underwood
delivered the opinion of the Court.
On the 19th of November, 1824, Love and Berryman filed their bill in chancery, against Joshua Baldwin and Jane M‘Nair, charging that Baldwin, resident in New Orleans, was indebted to them $1,447, on account of whiskey consigned to him; and that said M‘Nair, was indebted to Baldwin about $300, or that she had in her possession a negro of Baldwin’s of that value. The prayer of the bill Was, that the debt due by M‘Nair to Baldwin, or the negro in her possession, might be subjected to the payment of the complainant’s demand.
*490 The subpoma was served on ¡VJNair, December 2?tb, 1824, and returned, as to Baldwin, no inhabit . ant*
At the June term, 1825, Baldwin filed his answer? in which he says, that in May, 1824, he sold one hundred and sixty-one barrels of whiskey, which had been consigned to him by the complainants, to Gilly, believing that he promoted the interests of the complainants thereby; that if he ever was responsible to the complainants, he was entirely released from the fact, that the complainants apppointed Wm. Brown, & Co. their agents, to settle the business respecting the whiskey; and that they, as agents, went to Gilly and forbid him to pay to the respondent, any part of the amount due for the whiskey; thereby, taking the said Gilly as their debtor, and releasing the respondent, and that the complainants had received tho amount of the sales of the whiskey consigned, except that sold to Gilly. %
At the February term, 1826, Baldwin obtained leave, and filed a cross bill against the complainants, in which he calls on them, in substance, to answer whether the statements made in his answer are not true.
On the 19th of October, 1825, the complainants filed in the clerk’s office, an amendment to their original bill, (but no note thereof was even placed upon the order book, nor was any leave of court obtained for filing it) in which they charge, that since filing their original bill, Jane M‘Nair had died, by reason whereof and by virtue of the said Baldwin’s intermarriage with the daughter of said Jane and her husband, John MNair, deceased, he, Baldwin, was entitled to a distributive share of the estates of said John and said Jane; that they were ignorant of the amount of either estate; that.Patterson, Wallace, and.Parker, were executors of the last will of John M‘Nair, deceased, and Bullock, administrator on the estate of said Jane, who were about to make distribution of the estate; wherefore, said executors and.administrators were made defendants, and a prayer .added, that they -might be compelled to hold in their hands, so much of the slaves, goods, and chatties, or estate, of the por- *491 ííon of said Baldwin, as would be suipcicnt to satisfy the decree to be pronounced. A subpoena issued on this amendatory bill, against the executors and ministrator, and was served on all except Patterson, who was not an inhabitant of the commonwealth, on the 20th October, 1825. Said executors and administrator, never answered or paid any attention to the proceeding.
At the February term, 1827, without any deposition having been taken, the court, upon the state of the record already mentioned, taking Baldwin’s cross bill for confessed, and taking the bill of the complainants for confessed against all the defendants, except Baldwin, pronounced an interlocutory decree, in which they direct Baldwin to pay the complainants $1,447, with interest, and with a view to rendering a final decree, the court direct their master commissioner, Joseph Fowler, to ascertain and report whether Jane M‘Nair was, at the time she was served with process, or at any time thereafter, indebted to Baldwin, and whether she possessed ¡a slave or slaves belonging to him; also, to ascertain the discretion and value of any and all property, which was possessed by the executors of John M‘Nair, deceased, for the use and benefit of said Baldwin,- at the time of the service of process oil them, or which had been by them distributed since that period, to said Baldwin. The commissioner was authorized to receive proof, and was directed to report it to the court with his report upon the facts.
At the June term, 1827, the commissioner reported, and from his report it appears, that there was no evidence, that JaneMNair was indebted to Baldwin, or had any negro belonging to him, in her possession, at any time, except so far as she had possession of slaves in which Baldwin had an intesest, in right of his wife, as one of the heirs or devisees of John MNair, deceased, and which remained undivided at the death of Jane M‘Nair. The commissioner re* ported, that the executors of John M‘Nair were in possession of several slaves of the estate, to which Baldwin in right of his wife, had an interest; but, by an arrangement, which took place on the 10th of Janit* *492 ry, 1826, between George W. Morton, and Baldwin and wife, (they being the only heirs or devisees entitled to distribution) an allotment was made of all the negroes to Baldwin and wife, by consent, that the executors on that day conveyed the negroes, ten in number, to said Baldwin, at the estimated value of $2,700. That, afterwards, George W. Morton beearpe the purchaser of seven of said ten negroes, and also, of the interest of said Baldwiu and wife, in one hundred and fifty-six acres of land, left by John M‘Nair, giving for the land and negroes $4,000, leaving in the possession of Baldwin and wife, throe negroes, of the aggregate value of $675; that $1,500, part of the purchase money, was still unpaid by said Morton, and that he had executed his note Or obligation, for that sum, to John C. Richardson, jr. as trustee for Mrs. Eliza Baldwin and her children; and that there was no other estate in the hands of the executors, to which Baldwin and wife had title.
Amendment to bill should not be made after answer, without leave of court, and must be entered in court, by noting it on order bool<•»
*492 The deposition of George W. Morton was taken by the commissioner, without notice to Baldwin or the executors, or to Baldwin’s attorney; a'nd the commissioner’s report seems to be based upon the facts detailed in Morton’s deposition. Morton states in his deposition, that he made his purchases on the 10th of January, 1826, with a knowledge that this suit was pending against Baldwin, but without knowing that there was any lien on the property, in c msequence thereof.
At the September term, 1827, the court confirmed the report, and rendered a final decree in favor of the complainants, against Baldwin, for $1,447, with interest, at the rate of six per cent, per annum, from the 31st of May, 1824, until that time, together, with costs of suit, and directed a sale of the ten negroes, mentioned in the commissioner’s report or so many thereof, as might be necessary to pay the money decreed. To reverse this decree, Baldwin has prosecuted his writ of error.
There seems to us to be several errors, for which the decree of the circuit court must be reversed,
1st. The amendatory bill of the complainants was ■ not made with leave of the court, nor was it ever en- *493 te red in court, by noting it on the order book, Therefore, Baldwin never had legal notice that the complainants were endeavoring to subject his wife’s interest in her father’s estate, to the payment of the complainant’s demands. By the 27th. section of the act of 1810, I. Dig. 226, a new subpoena is not required, after the amendment of the bill.
Sale by dePi, of slaves, net mentioned iigv original bill, but only in amendatory bill, which def’t. is not bound to notice, will not be vacated as pendente lite.
The 25th section of the act, permits answers, replications, and other pleadings, .to be lodged with the clerk in vacation; but expressly provides, that the opposite party shall not be bound to notice them, until the same be entered in court, and the 30th. section shews how the entry in court, is to be made, to wit: By an entry on the order book. The amenda-tory bill of the complainants, was an important part of the pleadings. The defendant, Baldwin, had answered the original bill before the amendment was filed with the clerk; he was, therefore, not bound to notice the amendment, as it was never entered on the order book. He cannot be presumed to have notice of it. When, therefore it was manifest, from the master commissioner’s report, that no grounds for a decree was made out upon the original bill and answer, it not having been shewn that Jane M‘Nair, either owed or had a negro of Baldwin’s in her possession, it was erroneous to take a decree upon the amendatory bill, of which, Baldwin was not legally notified, and to which he never responded.
2d! The decree directs the sale of the negroes, sold t|> Gerge W, Morton, as well as those retained by Bajdwin and wife. This was done, we presume, upon the ground that Morion was a pendente lite purchased. He states in bis deposition, that he knew a suit was pending against Baldwin; but was not apprized that any lien had attached to the slaves, in consequence of that suit. It is not shewn that he knew any thing of the proceedings against the executors of John M‘Nair. if Baldwin w'as not bound by these proceedings, for want of notice, as we have already decided, much less can Morton be bound by them, who was no party to the suit. Baldwin had no reason to consider any of his property restrained, except that in the hands of Jane MNair, for the *494 reasons .mentioned. If then,he made a bona fide sale to Morton, when not so restrained, we can perceive no reason why Morton should be divested of the property, under the idea, that he was a pendente Hie purchaser. Under these circumstances, if it was designed to' impeach Morton’s title to the slaves,- he should have been made a party to the suit.
3d. The will of John MNair, deceased, was not exhibited. The nature of the devises to his children, does not appear. Whether his executors had title to the slaves, after the death of Mrs. MNair, or not, is altogether matter of conjecture. It may be presumed, from their giving their assent, in writing, to the allotment made by the commissioners, appointed by the county court, that they had something to do with the slaves, but to what extent, is altogether conjecture. The slaves may have been- devised to Jane M‘Nair, for life, with remainder over to the wives of Morton and Baldwin. There is reason to believe this was the case. It is shewn that Mrs. M'Nair possessed- and enjoyed the use of the slaves, during her life. The inference is very strong, that she did so with the assent of the executors. Their assent to the purticular estate, is good, as it regards the remainder man. If their assent was -once given they had nothing more to do with the slaves, and their subsequent assent to the distribution and allotment-made by the county court commissioners, was nugatory, making them defendants to the bill, under such circumstances, was an idle and useless proceeding.
4th. Although Baldwin’s amendment to his answer in the nature of a cross bill, may not contain all the allegations, which being responded to, would' elucidate more satisfactorily, the whole transaction, yet, we are of opinion, it ought not to have been passed by without notice. The complainants in response to it, ought to have stated how far they had interposed to prevent Gilly from paying over the money due, for the whiskey, to Baldwin. The terms of the consign-Enent are not particularly stated in the original bill. It does not appear whether Baldwin was directed to sell for cash in hand, or whether he was vested with a discretion to sell for cash, or on credit, as he might *495 deem most for the interest of tbe consignors; In the absence of the facts, on this subject, it would be premature to decide, how far the interference of the complainants, in preventing Gilty from making payment, may have the effect of exonerating Baldwin. .Had the complainants answered the cross bill, the facts, In all probability, would have been developed.
>Bledsoe and Combs, for plaintiff; Chinn and QriUen\ den, for defendants.
5th. It is clear, that the Complainants are endeavoring to reach property, which Baldwin, in right of his wife, has an interest in, but which he had not reduced to possession, previous to filing the original bill. It appears, that out of this property,, a settlement has been effected, or attempted, in behalf of Mrs. Baldwin and children. The bill states, that Baldwin had failed in New Orleans. From-the imperfect exhibition of the facts, we are inclined to the opinion, that equity should not aid the .complainants, even if . they were judgment creditors, until Baldwin’s wife,, her trustee, and her children, if they have been, provided for out of the property, are brought before the court, and a full investigation had. See Elliot &c. vs. Waring, V. Mon. 340-1, and authorities there cited.
The decree of the circuit court is reversed, and the cause remanded for new proceedings, not inconsistent with this opinion. And if the complainants should fail, within a reasonable time, to bring the proper parties before the court, or should fail to amend their bill and file it, and have it noted on the order book, embracing the property, in which Baldwin is interested, in right of his wife, which belonged to the estate of John M‘Nair, deceased, the circuit court is directed to dismiss the bill without prejudice.
The plaintiff in error must recover bis costs.